## South Bend Woolen Co. v. Jacob Reed's Sons, Inc., Appellant.

*Contract—Sale — Written contract — Prior negotiations — Disclosure of rejection of goods by another—Damages—Measure—Contract price—Affidavit of defense—Warranty—Defense not made therein—Appeal—Act May 14, 1915, P. L. 483.*

1. Ordinarily a vendor is not obliged to inform a proposed purchaser that the merchandise offered for sale has been rejected by some one else.

2. Where a contract of sale provides that merchandise is to be first class except in a particular named, the vendee cannot successfully defend an action for the purchase price merely by proof that a prior proposed purchaser rejected it because it was not first class in the excepted particular.

3. Presumptively all prior negotiations are merged in a written contract.

4. Ordinarily the contract price of goods sold measures the damages, where they have been delivered to the vendee.

5. Where a defendant attempts to return merchandise which has been delivered to him, and later plaintiff cuts small pieces therefrom and uses them at the trial for the purpose of demonstrating to the jury the error of defendant's claim that the goods did not comply with the contract of sale, this will not operate to revest in the vendor the title to the goods.

6. Under such circumstances, if the effect of cutting off the small pieces is to reduce the value of the merchandise, defendant will be entitled to a reduction of the contract price to the extent of the resulting diminution in value.

7. Under section 16 of the Practice Act of May 14, 1915, P. L. 483, 486, defenses which are not made in the affidavit of defense or in an amendment thereof, cannot be considered at the trial or on appeal.

Mr. Justice KEPHART dissents.

Argued January 10, 1922. Appeal, No. 50, Jan. T., 1922, by defendant, from judgment of C. P. No. 4, Phila. Co., March T., 1919, No. 1963, on verdict for plaintiff, in case of South Bend Woolen Co. v. Jacob Reed's Sons, Inc. Before FRAZER, WALLING, SIMPSON, KEPHART and SCHAFFER, JJ. Affirmed.

Assumpsit for breach of contract of sale. Before FIN-LETTER, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $12,264.22. Defendant appealed.

*Errors assigned* were various rulings and instructions, sufficiently appearing by the opinion of the Supreme Court, quoting record.

*William A. Carr,* with him *Sidney L. Krauss,* for appellant.—Defendant was induced to place its order upon the faith of the representation that the goods were new and over-order.

A fraud may be perpetrated which will vitiate a contract as well by suppresio veri, as by an expressio falsi. Fraudulent representation, or concealment of material circumstances, vitiates all contracts: Cassell v. Herron, 5 Clark 250; Price v. Lewis, 17 Pa. 51; Cornelius v. Molloy, 7 Pa. 293; Rockafellow v. Baker, 41 Pa. 319; Bigler v. Flickinger, 55 Pa. 279; Fisher v. Worrall, 5 W. & S. 478; Nelson v. Martin, 105 Pa. 229; Croyle v. Moses, 90 Pa. 250; Smith, Kline French Co. v. Smith, 166 Pa. 563; Edelman v. Latshaw, 180 Pa. 419; Jack v. Hixon, 23 Pa. Superior Ct. 419; Lukens v. Aiken, 174 Pa. 152.

Plaintiff was not entitled to recover for the price of the goods. The measure of damages in a case of this

character is the difference between the contract price and the market price at the time and place of delivery: Samuel v. de la Spta, 54 Pa. Superior Ct. 1; Jones v. Jennings, 168 Pa. 493; Mitchell v. Baker, 208 Pa. 377; Unexcelled Fire Works Co. v. Polites, 130 Pa. 536; Fogel v. Brubaker, 122 Pa. 7; Pittsburgh P. & P. Co. v. Pack. Co., 260 Pa. 135; Boyd v. Peanut Co., 25 Pa. Superior Ct. 199.

*Ralph B. Evans,* of *Evans, Bayard & Frick,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, February 20, 1922:

For some time prior to September 28, 1918, defendant had been endeavoring to obtain from plaintiff a quantity of Winterfield Kersey, a cloth then being extensively used in making uniforms for officers and privates in the United States Marine Corps, those of the former being made of a color and material approximating the standard fixed by the government, and by clothiers selected by the officers; and those of the latter, required to be of standard color and material, being made by the government itself. On that date plaintiff, through its agent, wrote defendant as follows:

"Gentlemen:—Sometime in the past you inquired whether we had any of the 20 ounce Winterfield Kersey on hand or coming through, which you could procure. We have just been advised by one of our mills that they have on hand and over-order approximately 2500 yards of this Winterfield Fabric, standard in every particular but not quite up to the standard shade. The goods are firsts in every other particular and taken as a whole are a very desirable looking lot of merchandise. The price is $4.50 net f. o. b. South Bend, Ind. Unfortunately we only have small clips in this office and are unable to send you samples of same. If, however, your representative could call to look these over, we would be very glad to take this matter up with him."

Defendant desired samples, however, and some being sent, it wrote on October 3, 1918, acknowledging the receipt thereof, and adding: "We will accept the lot of 50 pieces, but should have a swatch of each piece. You have sent us only 36 samples. The gray looking pieces do not strike us as favorably as they might, and we beg to inquire whether they should not be offered at a lower figure than the others." To the latter part of this letter, plaintiff replied on October 5, 1918: "In regard to the few pieces that have a grayish cast, desire to say that we will be unable to give you any lower figure on these pieces, as the price was made on the lot." Subsequently, samples of the remaining pieces were sent and were found satisfactory. This closed the negotiations, and was followed by defendant's order for the cloth, dated October 5, 1918, specifying "samples to be shipped from [plaintiff's] mill," the goods themselves to be "shipped from mill at once. Terms net 30 days. Shipping Instructions f. o. b. South Bend, Indiana," the quantity to be 53 pieces, the price $4.50 per yard, and "As the production of our mills is regulated as far as possible by such orders as this, notice must be given within ten days from date if the copy is not in accordance with the understanding had at the time of the sale." No such notice was given, and admittedly the contract was thus closed.

The entire quantity purchased was received by defendant on November 9, 1918, and one week later it wrote that 27 of the pieces were "very badly shaded and cloudy throughout" and would be shipped back; to which plaintiff replied that the 27 pieces were not shaded and cloudy and "refused to accept a return of the goods." On November 22, 1918, defendant wrote stating that they were "mailing under separate cover a check for the pieces accepted," but never in fact did so. On the next day it wrote it had learned that all the cloth had been rejected by the government and later offered at less than the contract price, adding that "the remaining pieces in our possession should either be returned to you or rebilled

at a price not to exceed that at which you offered them" to the government. To this plaintiff replied that the goods had been "returned on account of being off shade, not on account of being imperfect, and you understood perfectly that the shade of these pieces would vary, at the time this sale was consummated. Before you placed this order we submitted you a sample from each and every piece, showing you the shade. You were, therefore, not unaware as to the way these goods ran as to shade." On December 2, 1918, defendant wrote that because the goods had been rejected by the government, and the bulk thereof had been pronounced imperfect, it would return all of them. This it tried to do, but plaintiff refused to receive them, and brought the present suit to recover the purchase price.

On this appeal no question is raised regarding the evidence, but only touching the instructions to the jury. At defendant's request, the trial judge charged that if the "goods were not first in every particular, except not being quite up to the standard shade, then your verdict should be for the defendant," and if the "27 pieces...... were shaded and cloudy so as to be unmerchantable ......plaintiff cannot recover for them in this action." He refused, however, to instruct the jury that the failure to tell defendant the cloth had been once rejected by the government, though at first accepted by it, was a fraud justifying the rescinding of the contract; on the contrary he told them the rejection, unless for some other reason than because of the color, would not be a defense to the action. He also refused to say, either as a matter of law or for the consideration of the jury, that the words "over order" in the original letter meant "new goods manufactured by [plaintiff] which it had in excess of an order," and hence their rejection by the government justified a rescission. The verdict was for plaintiff for the full amount of its claim; upon this judgment was entered, and thus there is established the fact that all the goods were firsts in every particular, except as regards

the standard shade. Inasmuch as this contract was in effect a sale by sample, none of the questions argued on this appeal have any relevancy, for the jury found that the goods were up to sample and no assignment alleges error in the submission of this matter to them. The case was not tried or argued on this theory, however, and for that reason we propose to consider the points seemingly involved.

The record shows that the matter principally relied upon by defendant in the court below, was, as it is here, the alleged invalidity of the contract, growing out of the fact that defendant had not been advised the cloth had been rejected by the government, when tendered for the manufacture of uniforms for privates in the marine corps; but this claim cannot be sustained. There was no legal duty to disclose this fact, arising either out of the relations of the parties or because of an inquiry made; indeed there was no moral duty, since the only objection made by the government was that the cloth was a little off color, a fact disclosed in plaintiff's first letter to defendant. Moreover, defendant's president testified, "As far as the shades were concerned they were satisfactory to us," "We did not pay any attention" to the fact that the "material would not pass the standard requirements of the government," "We would depend on any goods that would be in our opinion good enough for the use of the officers in the field," all we "wanted [was] to get Kersey cloth necessary for the purpose of officers uniforms," and "the mere shading did not affect the sale to the officers." In the light of this evidence, it is difficult to understand how the action of the government in rejecting the cloth because it was "not quite up to the standard shade" could in any way avail defendant.

In varying ways, appellant sought to have the court below say to the jury that the cloth was not "over order," as it was stated to be in plaintiff's letter of September 28, 1918, and that this was a material misrepresentation which avoided the contract. To have so charged would

have been error. Even if we assume this statement would have been a material one, if embodied in the contract, still, like everything else said or written in the course of negotiations, it falls by the wayside, because not included therein. No reference thereto appears in the accepted order of October 7, 1918, and, as no objection was made "within ten days from the date" thereof, as stipulated in it, this matter was concluded at the expiration of that period. Moreover, the words "over order" were not shown to have any specific trade meaning, and defendant's attempt to have them limited to new goods which theretofore had not been offered to some other prospective purchaser and rejected by him, was repudiated by the jury, probably largely because it was negatived by the testimony of defendant's president, who said these words "ordinarily mean goods in excess of orders in the mill, an excess of manufacture by the mill, in excess of the orders which they may have; in other words, goods manufactured for stock, something of that kind." This cloth was "goods in excess of orders in [plaintiff's] mill......in excess of the orders which they may have," and is none the less "new goods," if of recent manufacture, though made for and rejected by some one else.

Appellant claims also that the jury should have been told the measure of damages was not the contract price but the difference between it and the market price at the time and place of delivery. Admittedly the cloth was sent to and received by defendant, and hence this contention is conclusively answered by section 63 of the Sales Act of May 19, 1915, P. L. 543, 561: "Where, under a contract to sell or a sale, the property in the goods has passed to the buyer, and the buyer wrongfully neglects or refuses to pay for the goods according to the terms of the contract or sale, the seller may maintain an action against him for the price of the goods." The futile attempt to return the cloth to plaintiff, of course does not affect this right.

Finally, defendant asked the court to say that plaintiff was not entitled to recover, because, preparatory to the trial, it cut off and later produced in court small samples of the cloth, for the purpose of demonstrating to the jury, as it did, the error of defendant's claim that the cloth was not uniform in color. This suggested defense is not made in the affidavit of defense, or in any amendment thereto, and hence, under section 16 of the Practice Act of May 14, 1915, P. L. 483, 486, it cannot be considered. Moreover, if defendant had really thought the cutting off of these pieces depreciated the value of the cloth, and had produced satisfactory evidence to that effect, doubtless plaintiff or the jury would have made due allowance therefor. No such evidence was offered, however, and the cutting off of these small samples (which were about the size of those sent to defendant before the contract was made), being in the interest of justice, as conclusively determined by the verdict of the jury, we cannot sustain the claim that it operated to revest in plaintiff the title which, both before and after this was done, it steadily maintained was in defendant. True, plaintiff could have brought the entire fifty-two pieces from Indiana to Philadelphia, to be displayed at the trial, but if it had done so doubtless the same claim would have been made, because of a supposed exercise of ownership. To sustain the contention now made, would be to assert that that which was done to obtain justice, should, by justice herself, be allowed to wholly defeat it.

The judgment of the court below is affirmed.

Mr. Justice KEPHART dissented.